IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| YYZ, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-136-SLR |
| HEWLETT-PACKARD COMPANY, | ) ) ) | |
| Defendant. | ) | |

| YYZ, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-579-SLR |
| ADOBE SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) | |

| YYZ, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-581-SLR |
| PEGASYSTEMS, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 8th day of December, 2014, having heard argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of U.S. Patent Nos. 7,603,674

("the '674 patent") and 7,062,749 ("the '749 patent") shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. **"Asynchronous messaging environment:"**[1] "A computer-based environment in which data is transmitted through messages (instead of large files) without prior coordination between communication end points." The specification describes the invention as "relat[ing] to computer-based apparatus and systems for measuring, monitoring, tracking and simulating enterprise communications and processes in an asynchronous messaging environment." (1:17-20)[2] To distinguish an asynchronous messaging environment from a synchronous one, the specification explains that

> enterprise communications were formerly primarily synchronous, or connection oriented, in which a connection is established with prior coordination between communication end points with data then being transmitted over the connection. Enterprise communications are now increasingly asynchronous, or connectionless, transmitting data without prior coordination between communication end points, such as through "event based" communications which use messages to move data instead of large files.

(1:48-57)

2. **"Process:"**[3] "Business operation." The specification explains that "[t]he

---

[1] Claims 1, 46, 51 and 70 of the '674 patent and claims 1, 22, 55, and 56 of the '749 patent.

[2] As the '674 and '749 specifications are substantively identical but have different line numbers, the court refers to the '674 patent throughout unless indicated otherwise.

[3] Claims 1, 46, 51, 55, and 76 of the '674 patent and claims 4, 22, 23, 28, 29, and 55 of the '749 patent.

2

activities of a business or enterprise can be grouped into processes. Processes are business operations that are separated as desired and usually occur across business units." (1:24-26)

3. **"Sub process:"**[4] "Step of a business operation." The specification explains that "[t]he processes are comprised of sub-processes." (1:28-29)

4. **"Activity:"**[5] "Part of a step of a business operation." The specification explains that "[e]ach sub-process may in turn be broken down into discrete activities such as providing customer number, entering that customer number, establishing pricing, determining a shipping date, etc." (1:34-36)

5. **"Original message:"**[6] "A message originating from a business process, sub process, or activity carrying information for the execution of a business process, sub process ,or activity." The specification explains that an original message is sent within a process, sub process, or activity. (3:11-12) The original messages are "received by the [messaging] broker." (3:58-59) In a certain embodiment, the "original messages [pass] between the sub-processes." (3:60-61)

6. **"Original message data:"**[7] "Data from the original message." The parties agree on this construction.

---

[4]Claims 1, 46, 51, 70, and 71 of the '674 patent and claims 4, 22, and 56 of the '749 patent. The specification also uses "sub-process."

[5]Claims 1, 46, and 70 of the '674 patent and claims 1 and 4 of the '749 patent.

[6]Claims 1, 46, 51, and 70 of the '674 patent and claims 1, 3, 4, 5, 22, 55, and 56 of the '749 patent.

[7]Claims 1, 46, 51, 52, 56, and 70 of the '674 patent and claims 1, 3, 4, 5, 22, 55, and 56 of the '749 patent.

7. **"Part of said original message data."**[8] The court declines to construe this limitation, in light of the construction of "original message" and "original message data."[9] The specification provides examples of data, including "date, time, customer number, materials, quantity, amount, or other information . . . ." (3:15-17)

8. **"Monitoring message:"**[10] "A message distinct from an original message, created by the messaging component of a messaging broker that contains at least part of the original message data, where a messaging broker is communication software that performs at least message transformation and routing based on information in the message." The specification provides that "[f]or each original message sent within a process, sub-process or activity, the preferred embodiments of the present invention send a separate monitoring message containing data from the central message repository or database. . . . Other embodiments may add data to the monitoring message aside from that contained in the original message."[11] (3:11-19, 4:19-23) The parties agree that the messaging broker performs at least "transformation" and "routing." Defendants' additional requirements for the messaging broker are not

---

[8] Claims 1, 46, and 51 of the '674 patent and claims 1, 55, and 56 of the '749 patent.

[9] Specifically, the court declines to add the limitation that the data must be "unchanged," as proposed by defendants. Having reviewed the portion of the prosecution history cited by the parties (D.I. 85, ex. B at JA-161-63), the court concludes that the additional limitation is not warranted.

[10] Claims 1, 46, 51, 56, and 70 of the '674 patent and claims 1, 22, 55, and 56 of the '749 patent.

[11] Plaintiff's proposal that a "messaging broker" may be hardware finds no support in the specification. Plaintiff cites only to an extrinsic document from April 2008 as support.

4

supported by the specification, which states that "[t]his messaging broker **permits** certain sophisticated messaging uses, such as message queuing, some data translation, etc." (3:53-54 (emphasis added))

9. **"Central message repository:"**[12] "Database for storing monitoring messages from more than one process, sub-process, or activity." The specification states that "the terms 'repository' and 'database' are used interchangeably . . . ." (3:63-65) "The monitoring message with its data is then sent from the messaging broker to a central database repository or database . . . ." (3:61-65) Contrary to plaintiff's proposed construction and as explained by the specification, other data "aside from that contained in the original message" may be part of the monitoring message.[13] (3:17-19, 4:22-23)

10. **"Providing, through a monitoring message, at least part of said original message data to a central message repository:"**[14] "Sending, through a messaging broker, the monitoring message, with at least part of said original message data to a central message repository." This construction is supported by the specification which explains that the messaging broker creates a monitoring message and then sends it to

---

[12]Claims 1, 2, 3, 4, 5, 6, 38, 46, 51, 55, 70, 75, and 76 of the '674 patent and claims 1, 22, 27, 28, 55, and 56 of the '749 patent.

[13]Having reviewed the declaration in the reexamination file (D.I. 85, ex. K at JA-546, 548), the court concludes that plaintiff did not "unmistakably disavow[] writing the monitoring message as records to a flat file or database during the reexamination." (D.I. 101 at 9). Therefore, the court declines to add defendants' proposed limitation regarding the format of the monitoring messages.

[14]Claims 1, 46 and 51 of the '674 patent and claims 1, 55, and 56 of the '749 patent.

5

the central database repository. (3:61-63, 4:16-19) While plaintiff argues that construction of this limitation is unnecessary, the parties agree that the monitoring message is created by the messaging component of a messaging broker and that the monitoring message is sent from the messaging broker to a central message repository. (See, D.I. 85, ex. K at JA-582-583, Patent owner's response to final office action) Therefore, the action of "providing" in this claim limitation is performed "through a messaging broker" and the addition of such limitation to the construction is appropriate.

11. **"Transaction record:"**[15] "A record in the central message repository." Defendants' additional limitation that such record "contains all of the monitoring message data for a process" is not supported by the specification. The "transaction record" is updated as "monitoring messages progress through any given process and/or sub-process." (4:60-62) Only "[o]nce the monitoring messages complete the transaction record, [is] all of the information needed to measure that transaction through the process . . . contained in one record in the central message database." (4:59-66) Some embodiments provide real-time tracking of the progress of transaction records. (5:22-24)

12. **"Orders:"**[16] "Request to purchase, sell, or supply goods or to perform work." The specification describes "taking orders and turning those orders into revenue," as well as, monitoring pipeline capacity to "sell, trade or barter . . . unused capacity." (1:27-28; 5:26-32)

---

[15]Claims 1, 46, 51, 57, and 70 of the '674 patent and claims 1, 2, 22, 55, and 56 of the '749 patent.

[16]Claim 44 and 82 of the '674 patent and claim 37 of the '749 patent.

6

13. **"Reviewing data collected in said transaction record."**[17] The court declines to construe this limitation. "Transaction record" is construed above.

14. **"Reviewing said central message repository."**[18] The court declines to construe this limitation. "Central message repository" is construed above.

15. **"Real time"/"real-time:"**[19] "In a non-deferred manner." The specification describes the use of "a 'real-time' tool[, which] may be used to track the progress of transaction records and/or processes . . . ." (5:23-24)

16. **"Transmitting said original message data from said first activity, via a first monitoring message, to a central message repository:"**[20] "Sending, through a messaging broker, the original message data from said first activity, via a first monitoring message, to a central message repository." **"Transmitting said original message data from said second activity, via a second monitoring message, to said central message repository:"**[21] "Sending, through a messaging broker, the original message data from said second activity, via a second monitoring message, to said central message repository." **"Transmitting said original message data from said first sub process, via a first monitoring message, to a central message**

---

[17]Claim 51 of the '674 patent and claim 2 of the '749 patent.

[18]Claims 75 and 76 of the '674 patent and claims 27 and 28 of the '749 patent.

[19]Claim 46 of the '674 patent and claim 29 of the '749 patent.

[20]Claim 70 of the '674 patent. The court declines to construe "transmitting" in isolation as requested by the parties.

[21]Claim 70 of the '674 patent.

**repository:"**[22] "Sending, through a messaging broker, the original message data from said first sub process, via a first monitoring message, to a central message repository."

**"Transmitting said original message data from said second sub process, via a second monitoring message, to said central message repository:"**[23] "Sending, through a messaging broker, the original message data from said second sub process, via a second monitoring message, to said central message repository." As with the "providing" limitation above, the addition of the limitation "through a messaging broker" is appropriate.

17. **"Secure basis:"**[24] "Access on an authorized basis." The parties agree to this construction.

18. The court has provided a construction in quotes for the claim limitations at issue. The parties are expected to present the claim construction to the jury consistently with any explanation or clarification herein provided by the court, even if such language is not included within the quotes.

_/s/_
United States District Judge

---

[22] Claim 22 of the '749 patent.

[23] Claim 22 of the '749 patent.

[24] Claim 38 of the '674 patent.

8